DEMAS STRONG, Respondent, *v.* THE BROOKLYN CROSS-TOWN RAILROAD COMPANY, Appellant.

*It seems* that the reduction of the capital stock of a corporation by proceedings under the act of 1878 (Chap. 264, Laws of 1878) does not authorize the distribution among the stockholders of a sum equal to the difference between the original and the reduced amount of capital ; and such a distribution is unlawful even where the original capital was actually paid in, unless it appears that it is unimpaired.

Where, however, the corporation has on hand actual capital available for the payment of debts, exceeding the amount to which it has reduced its stock, the excess may be distributed.

The provision of the Revised Statutes (1 R. S. 602, § 2), prohibiting a corporation from depleting its capital stock by payments to stockholders, does not apply, as the actual capital in excess of the reduced amount ceases to be capital stock.

*It seems* that the design of the act of 1878 is to permit the amount of the capital stock of a corporation to be diminished, where, either it was originally fixed at too high a sum, or has become impaired and the nominal exceeds the actual capital.

The proceedings end with the filing of the prescribed certificate, which, of itself, operates to make the reduction, and the right to distribute the surplus depends, not upon the act, but upon general principles.

Defendant whose capital stock was $400,000, by proceedings under said act reduced it to $200,000. The directors thereupon issued certificates of indebtedness for $200,000, bearing interest, for distribution to stock-

holders, on their surrendering their original stock certificates, and accepting in exchange certificates for the reduced stock. All of the stockholders, except the holders of one hundred shares of the stock, assented to the arrangement and received their certificates. In an action by plaintiff, who held fifty of said one hundred shares, to restrain the company from paying said certificates out of its earnings or funds, it appeared that before the commencement of the action $55,000 of said certificates had been paid out of the net earnings of the company. There was no evidence or finding that payment of the certificates would infringe upon the capital. *Held*, that plaintiff was not entitled to the relief sought; that, conceding the certificates to have been illegally issued, the holders were entitled to receive any surplus, and the company had the right to pay the certificates whenever it could do so without infringing upon the reduced amount of its capital stock.

(Argued May 10, 1883 ; decided October 9, 1883.)

Appeal from judgment of the General Term of the City Court of Brooklyn, entered upon an order made May 2, 1882, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff as a stockholder of the defendant, to have certain certificates of indebtedness issued by it declared illegal, and to restrain it from paying the same or the interest thereon.

*Robert Sewell* for appellant. The capital stock of a corporation is that sum which has been actually paid in by subscribers to the capital stock for the purpose of the trade or business in which the corporation is engaged. (1 R. S. [2 Edm. ed.] 558; *Burr* v. *Wilcox*, 22 N. Y. 556 ; *Burrall* v. *Bushwick R. R. Co.*, 75 id. 216 ; *Boynton* v. *Hatch*, 47 id. 228, 232.) A corporation indebted for any cause has power to issue evidences of such indebtedness, and it may pay interest for the time that it withholds payment of the principal sum. ( *W. V. C. Co.* v. *Vallette*, 21 How. [U. S.] 424 ; *Barry* v. *Merchants' Ex. Co.*, 1 Sandf. Ch. 280 ; *Nelson* v. *Eaton*, 26 N. Y. 410 ; *Moss* v. *Averill*, 10 id. 449 ; *Merchants' Ass'n* v. *White Lead Co.*, 35 id. 505.) By the act of 1878 (Chap. 264, § 3) authority to reduce the capital of a corporation is conferred,

and that carried with it the right to return the amount over and above the reduced capital to the persons entitled to it. (U. S. R. S., § 5143; *Seely* v. *N. Y. Ex. Nat. B'k*, Thompson's Nat. Bank Cases, 804; 8 Daly, 400; 78 N. Y. 608.) Plaintiff has, by his conduct, estopped himself in equity from maintaining this action. So far as he and his alleged fellow stockholders are concerned they have lost their private rights by failure to assert them. The right to sue on behalf of the public rests strictly with the law officer of the State. (1 Edm. R. S. 557 [2d ed.]; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 185; *Taylor* v. *C. & M. Ry. Co.*, L. R., 2 Exch. 390; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 63; *Phosph. Co.* v. *Green*, L. R., 7 C. P. 43; *Evans* v. *Smallcombe*, L. R., 5 Hoff. L. 249; *Hatch W. U. Tel. Co.*, 9 Abb. N. C. 233, 235; 2 High on Injunctions [2d ed.], 796, § 1212; *Cont. B'k* v. *B'k of Commw.*, 50 N. Y. 575; *Voorhis* v. *Olmstead*, 66 id. 113; 1 Grant's Cases, 412; *Terry* v. *Eagle Lock Co.*, 47 Conn. 141; *Hilton* v. *Granville*, 1 C. & P. 292; *Graham* v. *B. R. R.*, 2 Hall & Twells, 450–456; *Williams* v. *Lord Jersey*, C. & P. 91–97; Hilliard on Injunctions, 34; *Tash* v. *Adams*, 10 Cush. 253; *Dublin* v. *Caldwell*, 28 Ga. 117; *Gregory* v. *Patchett*, 33 Dev. 602; *Chapman* v. *Railroad Co.*, 6 Ohio St. 136; *Binney's Cases*, 2 Bland, 104.)

*John H. Bergen* for respondent. The act of 1878 authorizes only the reduction of capital stock. It does not authorize the "dividing, withdrawing, or, in any way, paying back" to the stockholders, or any of them, any part of the capital stock of the company, and without such "consent" of the legislature such action is illegal. (2 R. S. [Banks' 6th ed.] 398, § 2, 1 Edmonds' Statutes at Large, 559, side page 601, § 2, Green's Brice's Ultra Vires, 67, 82, 100, and note, and 115, 158, *Balfour* v. *Ernest*, 5 C. B. [N. S.] 601'; 28 L. J. C. P. 170; *In re Phœnix L. Ass. Co., Burgess & Stock's Case*, 2 J. & H. 441; 31 L. J. Ch. 749; *A. R. C., etc., Co.* v. *Riche*, 7 Eng. & I. App., L. R., H. L. 653, 671; *E. A. R. Co.* v. *E. Co. Rev. Co.*, 11 C. B. 775; 21 L. J. C. P. 23; *Thomas* v. *R.*

*R. Co.*, 11 Otto [U. S.], 80 ; *Davis* v. *Old Colony R. R. Co.*, 131 Mass. 258, 259.) A contract is void when the statute declares it to be void in express words, or, what is equivalent, prohibits the corporation from making·it. Such a declaration of the legislative will is decisive against its validity, whether the question arises in litigation between the parties or in a suit brought by stockholders to enjoin the corporation from performing it. (Pierce on Railroads, 511 ; *R. & B. R. R. Co.* v. *Proctor*, 29 Vt. 93, 96 ; *Vt., etc., R. R.* v. *Vt. C. R. R. Co.*, 34 id. 149 ; *Richardson* v. *Sibley*, 11 Allen, 65 ; *Leavitt* v. *Palmer*, 3 N. Y. 19 ; *Bissell* v. *Mich. R. R*, 22 id. 258, 265, 269 ; *Crocker* v. *Whitney*, 71 id. 170.) Corporations have no power not conferred by their charters. (1 Redfield on Railways, 540 ; *Davis* v. *Old Colony R. R.*, 131 Mass. 258, 259.) Whatever mode of exercising corporate powers is prescribed by the terms of the grant must be strictly pursued or the act done will be *ultra vires.* (*Matthews* v. *Skinner*, 62 Mo. 329.) A corporation must exercise its powers in a reasonable manner. (*St. Louis* v. *Webber*, 44 Mo. 547 ; *Hoole* v. *Gt. W. Ry. Co.*, L. R., 3 Ch. App. 262 ; *In re United Service Co.*, L. R., 5 Ch. App. 707 ; *Hope* v. *Int. Financial Soc.*, L. R., 41 Ch. Div. 327 ; *Pickering* v. *Stephenson*, L. R., 4 Eq. 322.) A corporation can make no valid contract except such as relates to the business and objects of the corporation. (Ind. Sup. Ct., 1870 ; *B'klyn Grand R'd Co.* v. *Slaughter*, 33 Ind. 185 ; *Wecker* v. *First Nat. B'k*, 42 Md. 581 ; *Littlewort* v. *Davis*, 50 Miss. 402 ; *Davis* v. *Old Colony R. R.*, 131 Mass. 258, 259.) The act of 1878 did not repeal the provisions of the general statute, which prohibits the division, withdrawal or payment to the stockholder of any portion of the capital stock. (Sedgwick on the Construction of Statutory and Constitutional Law [2d ed.], 97, 100, note ; id. 105, 106 ; *Town of Red Rock* v. *Henry*, Sup. Ct. [U. S.], January 8, 1883 ; Rep. in Alb. L. J., March 31, 1883, p. 237.) The resolution declaring the capital stock to be $200,000 instead of $400,000 amounts to nothing except to enable the company to evade taxation. (*People, ex rel. Williamsburgh City Gas Co.*, v. *Assessors*, 56

N. Y. 206; *Winchester Repeating Arms Co.*, 103 U. S. 268.)
The doctrine of equitable estoppel or *laches* does not apply to
stockholders who may have been slow in complaining of an act
which is in violation of an express statute. Nor where the act
complained of is absolutely void or *malum in se.* (*Crocker* v.
*Whitney*, 71 N. Y. 170; *Kent* v. *Quicksilver Mining Co.*, 78
id. 159; *Ashbury Ry. Co.* v. *Richie*, L. R., 7 E. & I. App.
653.)

RAPALLO, J. The defendant is a horse railroad company,
organized under the general laws of this State, and the plaint-
iff is the holder of fifty shares of its capital stock, of one hun-
dred dollars each.

The company was organized in the year 1868, with a capital
of $300,000. In 1874 its capital was increased to $400,000.
In June, 1878, under chapter 264 of the Laws of 1878, it
reduced its capital to $200,000 by a vote of its directors and
stockholders, and the proceedings prescribed by that act, and
immediately thereafter the directors caused to be issued cer-
tificates of indebtedness, bearing interest, for $200,000, to be
distributed to the stockholders on their surrendering their cer-
tificates for $100 shares, and accepting in exchange certificates
for $50 shares. All of the stockholders except the plaintiff
and the holders of fifty other shares assented to this arrange-
ment, and surrendered their certificates of shares of $100
each, receiving in exchange certificates for an equal number of
shares of $50 each, together with certificates of indebtedness
for a like amount.

The judgment appealed from restrains the company from
paying these certificates of indebtedness, or any part thereof,
or any interest thereon, out of the earnings or funds of the
company.

REYNOLDS, J., on continuing the temporary injunction at
Special Term, held that the act of 1878 (Chap. 264), under
which the defendant proceeded, did not authorize the payment
to the stockholders of any of the capital, but was intended

simply to enable corporations whose capital had been impaired to reduce its nominal amount.

There is much in the frame of the act which favors this view.

The only things required by the act are that whenever any company shall desire to call a meeting of its stockholders for the purpose of "*diminishing the amount* of its capital stock," a certain notice shall be published and served; that a vote of at least two-thirds of all the shares of stock shall be necessary to a diminution of *the amount* of the capital stock; that the meeting shall proceed and the vote be taken in the manner pointed out by the act, and that if, on canvassing the votes, it shall be found that a sufficient number of votes have been given in favor of *diminishing the amount of capital*, a certificate shall be made and verified, showing:

*First.* The amount of capital actually paid in.

*Second.* The whole amount of debts and liabilities of the company.

*Third.* The *amount* to which the capital stock shall be diminished.

This certificate is required to be filed, with the approval of the comptroller, to the effect:

*First.* That the reduced capital is sufficient for the proper purposes of the company.

*Second.* That it is in excess of all debts and liabilities of the company, exclusive of debts secured by trust mortgages.

*Third.* That the actual market value of the stock of the company prior to the reduction of the capital was less than the par value of the same.

These are all the requirements of the act, and it closes by declaring that when the certificate is filed, the capital stock of the corporation shall be reduced *to the amount* specified in such certificate.

There is no provision for returning any portion of the actual capital held by the company, to the stockholders, nor for any inquiry into the financial condition of the company, beyond the fact how much of the capital was paid in and the amount

of its debts not secured by trust mortgages. The filing of the certificate *of itself* operates to reduce the amount of the capital, without the withdrawal of any part of the actual capital; and it will be seen that while the act is grossly incomplete if it was intended to authorize the distribution of any part of the actual capital, it contains every thing that is essential if its object was simply to reduce the nominal amount of capital specified in the certificate of incorporation, so as to meet the case of a company whose actual capital has been impaired, or who has been unable to obtain subscriptions to its stock for the full amount named in the certificate of incorporation.

The requirement that, to authorize it to avail itself of the provisions of the act, the company must obtain the certificate of the comptroller that the market value of its stock is less than par, shows that the reduction which the act had in view was the reduction of the nominal capital to an amount which should correspond with its actual value, rather than a withdrawal and distribution of actual capital. A corporation whose actual capital greatly exceeds the nominal amount of its stock is precluded from availing itself of the act, unless the fact should be that while its stock is intrinsically worth much more than par, its market value is less. Even in that exceptional case, a reduction of the *amount* of its capital as fixed in its charter would not afford the proper relief. All the provisions of the act seem, by its language, to be aimed at a *diminution of the amount* at which the capital stock was originally fixed, not at a withdrawal and distribution of actual capital.

If such withdrawal had been intended, provision would have been made for ascertaining in some way how much should be withdrawn and under what restrictions. The amount of property available for the payment of debts would have to be ascertained as well as the amount of the debts; in this act no inquiry is required to be instituted as to the value of the property or assets of the corporation, nor as to how much can be withdrawn or distributed with safety to its creditors, but the comptroller is only to certify that the reduced capital, that is, the amount to which it is to be diminished, is sufficient for

the proper purposes of the company, and that it exceeds all debts and liabilities of the company, exclusive of debts secured by trust mortgages. In view of the strict provisions of the act of 1825 (1 R. S. 602), which prohibit the directors of any company from dividing or paying to stockholders any part of its capital, and which are not repealed by the act of 1878, it is not supposable that the legislature intended to permit a corporation to distribute any part of its actual capital among stockholders, so long as it owed debts, without retaining enough property to pay the debts; but no provision is made in the act of 1878 for any examination into these matters. Its provisions are all consistent with the interpretation that the act had in view only the diminution of the amount fixed as the amount of the capital stock, and did not contemplate the distribution of any part of the actual capital.

But, however this may be, it is certain that the mere diminution, by the proceedings authorized by the act of 1878, of the amount of the capital stock, does not authorize the distribution among the stockholders of a sum equal to the difference between the amount originally named as the capital, and the reduced amount fixed by the vote of the stockholders, even if it appears that the original amount was actually paid in. To authorize such a distribution, if the original capital has been paid in, it should appear that the capital so paid in has not been impaired; and if it has been impaired, it should appear that the corporation still has on hand actual capital, available for the payment of debts, exceeding the amount to which it has reduced its capital, and if it has, the excess only ought to be distributed.

The language of the act of 1878 conclusively shows that its intention could not have been to authorize the distribution of the difference between the original amount of capital and the diminished amount. It does not even require that the proceedings to reduce the capital should show that the original capital has all been paid in. The certificate must show what amount of it has actually been paid in, thus recognizing that

the amount of the capital may be reduced before it has been actually paid in, and showing that it is the *amount* and not the actual capital that is to be reduced. The reduced amount may still exceed the sum which has been actually paid in, and in that case the stockholders must pay it in after the reduction. The amount named must be an amount sufficient for the purposes of the company, but if it has not been paid in there can be no surplus for distribution.

I am inclined to concur with REYNOLDS, J., in the view that the design of the act of 1878 was to permit the *amount* of the capital to be diminished, where, either it had been, originally, fixed at too high a sum, or where it had become impaired, and the nominal exceeded the actual capital. But although this was the purpose of the act, yet it is possible that cases may occur where a corporation, having on hand actual, tangible capital, equal to the full nominal amount of its capital stock, may comply with the provisions of the act, and thereby diminish the nominal amount of its capital. In such a case the excess of its funds or property actually on hand, over and above the sum which the company is bound to keep as capital (viz., its nominal capital, as reduced), is converted into a surplus fund which it can dispose of by dividing it among its stockholders. Its right to make this distribution depends upon general principles, and not upon any provision of the act of 1878. The proceedings for the diminution of the amount of the capital stock end with the filing of the certificate. The consequences which flow from such reduction depend upon the circumstances of each case. The reduced amount becomes the amount which the company is bound by law to provide as capital, and which it is prohibited, by the act of 1825 (1 R. S. 602), from depleting by payments to stockholders. The prohibition contained in that act, against any company reducing its capital stock without the consent of the legislature, was doubtless inserted for the reason that by reducing its amount, the actual capital which the company might have, in excess of the reduced amount, would be liberated and cease to be capital stock, and a division of it would escape the prohibition against dividing capital stock.

The surplus, if any, which a corporation reducing the amount of its capital, under the act of 1878, is at liberty to pay to its stockholders, must, in every case, be ascertained, and depends upon the result of an examination into its affairs, and not upon the difference between the original amount of capital and the reduced amount, and whenever, by sales of property, or by means of earnings, or otherwise, the corporation comes in possession of funds which are in excess of the reduced amount fixed as capital, it can distribute that excess without violating any law.

These principles were recognized in the case of *Seeley* v. *New York National Exchange Bank* (8 Daly, 400; affirmed in this court in 78 N. Y. 608). That case arose under section 5143 of the United States Revised Statutes, which permits National banks to reduce their capital, under certain restrictions, but, like the act of 1878, contains no provision for a distribution, among the stockholders, of any part of the original capital, the Revised Statutes of the United States containing the same prohibition as the law of this State against dividing capital. The defendant in that case reduced its capital from $500,000 to $300,000, and the directors resolved to pay to the stockholders $100,000 and retain the other $100,000 as a surplus fund, to be used in the business of the bank. The court held that it was bound, and could be compelled, to pay to the stockholders the whole of the $200,000 of reduction. But the material point on which that case turned was, that the court found as facts that the whole capital of $500,000, which had been paid in by the stockholders, was unimpaired, and as $300,000 only was retained as capital, it was held that the excess ceased to be capital, and belonged to, and was a surplus distributable among, the stockholders.

The proceedings for the reduction of the amount of the capital in the present case are not assailed. They received the almost unanimous consent of the stockholders, and all but the owners of one hundred shares, out of four thousand, have accepted the certificates of indebtedness with certificates of the reduced shares, and surrendered their original certificates of

stock.   Before this action was brought, three years and upwards had elapsed since these proceedings without any step being taken by the plaintiff in the matter.  Certificates to the amount of $189,-500 had been issued, of which $55,000 had been paid out of the net earnings of the company, and the plaintiff now objects, for the first time, to the payment of the residue.   If he has not, by his delay, lost the right to come into a court of equity to impeach the proceedings, he at least is bound to make out a clear case of violation of corporate power, to his injury.   This, we think, he has failed to do.   The case contains no evidence, but the findings of the court are based wholly upon a stipulation of the parties, admitting the facts found, and the plaintiff must, under those circumstances, be deemed to have required to be inserted therein all that is material to make out his case.   Assuming that the facts found show that the issuing of negotiable certificates of indebtedness for the amount of the surplus, over the amount of the capital as reduced, was unauthorized, that is not sufficient to entitle the plaintiff to the judgment he has obtained. The injunction is not against issuing the certificates, but against paying them.   Even on the assumption that the holders could not maintain actions against the company on these certificates, yet there can be no doubt that the transfer of them by the stockholders is sufficient to authorize the holders to receive the surplus which the stockholders were respectively entitled to receive in place of their surrendered stock, and that a payment to the holder of the certificate would be a good payment to the stockholder who had transferred it.   But furthermore it does not appear that all the certificates have been transferred, but this injunction restrains the payment of all, and would thus prevent the payment to stockholders who have not parted with their certificates, of the sums due them.   The case, therefore, is narrowed down to the inquiry, whether enough has been shown to entitle the plaintiff to restrain the payment to the stockholders, of the equivalent of the stock which they have surrendered.   If this payment can be made without infringing upon the $200,000 of capital which the company is bound to retain, it is the right as well as the duty of the company, as

has been shown, and as was decided in the case of *Seeley* v. *New York National Exchange Bank*, to make the payment. . It is claimed in the answer of the defendant, that when the capital was reduced, it had and held in its hands an excess over its actual capital stock, of $200,000, which belonged to the stockholders.   There is consequently no admission that the payment would infringe upon the capital, and there is no finding, or evidence that the payment would infringe upon the capital.   As to the $55,000 which have been paid, that sum is found to have been paid out of net earnings, and is free from all objection ; as to the remaining $134,500, the payment of which is sought to be restrained, the case seems to have been submitted to the court on the assumption that its payment would not infringe upon the capital.   The judgment seems to have been based, not upon the ground of any such infringement, but wholly upon the conclusion of law that the certificates of indebtedness were illegally issued.   In our judgment that conclusion, if sound, does not legitimately lead to the result that their payment should be enjoined.   They were evidences of the amount due to each stockholder, if the surplus existed, and were perhaps *prima facie* evidence, or admissions of the existence of the surplus, but even if actions could not be maintained upon them, the corporation had the right to pay them whenever it could do so, from any source, without infringing upon the reduced amount of its capital.   So far as the judgment restrains the payment out of earnings, it is clearly without foundation.   The plaintiff is entitled to an equal share with the other stockholders, and without showing that the payment will infringe upon the capital as reduced, it does not appear that he will be injured, nor will any law be violated by the payment.

The judgment should be reversed, and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.