# SUPERIOR COURT OF BALTIMORE CITY.

Filed December 10, 1897.

THE STATE OF MARYLAND, EX RELATIONE ROBERT H. CLARK, JR., BY HIS NEXT FRIEND, ROBERT H. CLARK,

VS.

THE MARYLAND INSTITUTE FOR THE PROMOTION OF THE MECHANIC ARTS.

*John Phelps* and *W. Ashbie Hawkins* for petitioner.

*Edgar H. Gans* and *John M. Carter* for respondent.

RITCHIE, J.—

The petitioner, Robert T. Clark, Jr., a colored youth, sixteen years of age, prays that a writ of mandamus may issue, commanding the Maryland Institute for the Promotion of the Mechanic Arts, to admit him as a pupil into its Schools of Art and Design. The petitioner rests his claim to be so admitted on an ordinance of the Mayor and City Council of Baltimore, and the contract entered into between the city and said Institute in pursuance thereof.

The case comes up for hearing on a demurrer to the answer.

The defendant was incorporated under the Act of 1849, Ch. 114, and re-incorporated under the Act of 1878, Ch. 313. The object of its incorporation is the encouragement and promotion of manufactures and the mechanic and useful arts, by the establishment of schools, by popular lectures, mechanical exhibitions and other means indicated in its charter.

In pursuance of its object the respondent established Schools of Art and Design, and while the city, under the authority of the State, has established for both races a most liberal and advanced system of public schools, it has no school in which the special studies of art and design are prosecuted as

they are in the schools of respondent. From time to time since 1881 the city has passed ordinances and made contracts, similar to the ordinance and contract now in question, for the education of pupils in said schools.

The ordinance in question, No. 26 of 1893, authorizes the Mayor, Comptroller and Register to enter into a contract with the respondent "for the instruction of pupils" in its said schools of art and design for the period of eight years and provides that "after the passage of this ordinance and annually thereafter * * * there shall be appointed one pupil by each member of the First and Second Branches of the City Council, who shall be entitled to instruction for the period of four years in said schools." The ordinance further provides that in case of vacancies arising from the failure of members to make appointments, the same shall be filled by the Mayor; also that the Mayor, Comptroller and Register shall annually, or as often as they may deem it expedient, "inspect said schools, and the condition and manner in which the terms of said contract are being fulfilled," and, if said contract is being faithfully complied with, the Comptroller is to pay the said Institute annually the sum of nine thousand dollars.

A contract was duly entered into by the respondent in pursuance of this ordinance, whereby it agreed in consideration of the annual payment of nine thousand dollars to receive into its said schools of art and design thirty-three "pupils," for each of the eight years covered by the contract, to be appointed as provided in the ordinance, and the ordinance was in terms made part of the contract.

From their establishment up to the year 1891 these schools had been exclusively for white pupils. male and female. In that year one colored pupil was appointed, and admitted. and he completed the course. In 1892 another colored pupil was appointed and admitted. but left the Institute soon after. In 1895. since the date of the present contract. two more were appointed and admitted, and are now pursuing their studies.

The answer, however, avers, and the demurrer admits, that the overwhelming public sentiment, both white and colored, at the time these pupils were admitted, was against mixed schools; that their admission was but tentative, with the hope that none others would be appointed, and in no wise as an acknowledgment of any contractual obligation; that notwithstanding the most earnest and zealous efforts of the managers and teachers to overcome the objections of the white pupils and their parents, the presence of these colored pupils was disastrous to the interests of the Institute, largely reduced the number of its pupils, and threatened to destroy the usefulness of these schools.

The respondent, therefore, in November, 1895, adopted this by-law, viz: "Resolved, that hereafter only reputable white pupils will be admitted to the schools," and notice thereof was thereupon sent to each member of the City Council. In February, 1896, Dr. J. Marcus Cargill, a member of the City Council, appointed the petitioner as a pupil. The respondent declined to admit him on account of color, notified Dr. Cargill of the fact, and asked him to make another appointment. He having failed to do so, the vacancy was subsequently filled by the Mayor in October, 1896. In September last Dr. Cargill again appointed the petitioner as a pupil for 1897; the respondent again refused to admit him for the reasons stated, and Dr. Cargill failing to make any other appointment, this vacancy also was filled by the Mayor.

The petitioner claims that by virtue of his recent appointment he has a clear legal right, enforceable by mandamus, to be admitted to the schools of the respondent. He raises no question as to the validity of the contract. He insists that the word "pupils" embraces both white and colored, and alleges that his rejection under this discriminating by-law was a breach of contract, and also that the said by-law is void as being in violation of the Fourteenth Amendment of the Constitution of the United States, in that it abridges one of his privileges, or immunities, as a citizen of the United States, and denies him the equal protection of the laws.

It is clear that the "immunity" clause of the amendment does not apply to this case. Under that amendment no State can abridge the privileges or immunities of citizens of the United States, but the right to free education is not a privilege or immun-

ity incident to citizenship of the United States. Whenever it exists, it exists by virtue of the law of the State, and owes its existence altogether to the authority of the State. People vs. Gallagher, 93 N. Y. 435; Ward vs. Flood, 48 Cal. 36; State vs. McCann, 21 Ohio St. 210; Lehew vs. Brummell, 103 Mo. 550. This clause therefore does not require further consideration.

When, however, a uniform system of public schools has been adopted by the Constitution or laws of the State, no local board or any other State agency can discriminate on account of race, or impair the equal enjoyment of its privileges. Authorities supra and cases cited by High, Section 332. And a mandamus will be issued under the "equal protection" clause of the Fourteenth Amendment to enforce the right of any one who may be denied admission to the public schools on account of color.

The respondent, however, claims that under its charter it is a private corporation. If this claim be good, then this discriminating by-law is not within the Fourteenth Amendment, unless the operation of the contract in question is to make the respondent a part of the public school system of the city, and thereby a municipal agency, and thus, under the statute relating to public schools also a State agency.

The prohibition of the amendment in this connection is, viz.: "Nor shall *any State * * ** deny to any person within its jurisdiction the equal protection of the laws." This amendment has been repeatedly construed by the Supreme Court, and it is well settled that its prohibitions refer exclusively to State laws and State action. This State action may be manifested by any one of the departments of its government, or by any of its officers or agents, or by a municipal corporation acting under legislative authority, but, unless the act in question be done in some way under the authority of the State, it is not within the prohibitions of the amendment. The amendment has no application whatever to the acts of private individuals or private corporations. Civil Rights Cases, 109 U. S. 11-17; Virginia vs. Rives, 100 U. S. 318; United States vs. Cruickshank, 92 U. S. 554; United States vs. Harris, 106 U. S. 638.

The Maryland Institute is neither a public nor *quasi* public corporation. There is not a single power exercised by its members in their corporate capacity, which they are not competent to exercise as individuals, and it is a strictly private corporation.

The Regents vs. Williams, 9 G. & J. 397.

Perry vs. House of Refuge, 63 Md. 22.

The Fourteenth Amendment, therefore, has nothing to do with this case, unless the status of the Maryland Institute as a corporation has been changed by the contract in question. The petitioner claims that this contract makes the respondent *pro hac vice* a municipal agency, and operates to make it a part of the public school system.

The status of this corporation was defined by the Court of Appeals in St. Mary's School vs. Brown, 45 Md. 310, in which case was considered the validity of certain appropriations made to respondent and other institutions. It was there held that the Maryland Institute was not a municipal agent, was subject to no municipal control, occupied no municipal relation, was not subject to any of the ordinances or regulations adopted by the city under its authority from the State to establish a system of public schools, and that it was no part of the system established.

There has been no change since then in the conditions mentioned, unless it has been wrought by this contract, and this contract has wrought no change. The management of the Institute is altogether in the hands of officers elected by its members, it is under no municipal control, is subject to none of the ordinances relating to public schools, and is no more a part of the public school system now than it was in 1876. The Mayor, Comptroller and Register are authorized to inspect these schools and the manner in which the contract is being complied with, but nothing more. The relation of the respondent to the city is simply that of a contracting party, and the contract is just such a one as the Institute might make with any citizen, who wished to have instructed thirty-three pupils to be designated in a given manner. The fact that this contract was made with the city instead of with an individual cannot change the corporate status of respondent, or make this any other than

a private contract. It creates no possible official, governmental or political relation between the city and the Institute, without which the respondent cannot be considered a municipal or State agency.

The city has ample power to contract with reference to municipal matters. It may contract for the erection of buildings, the construction of bridges, for paving the streets, and so forth, but the contractor does not become a part of the municipal government, or a municipal agency in any civil or political sense, by virtue of his contract.

Mechem on Public Officers, Secs. 2-5.

There having been no change in the status of the respondent by reason of this contract, it being still simply a private corporation and no part of the public school system, it follows that the Fourteenth Amendment has no application to the case, and the relation between the respondent and the city is a contractual one, and nothing more. Whatever rights the petitioner has, therefore, must depend on the term of the contract.

I cannot agree with the petitioner in the contention that he has rights under the ordinance, as separate and distinct from the contract. The ordinance did nothing but empower the officers named to make the contract, and had the Institute declined to execute it, the ordinance of course would have amounted to nothing.

The position of the petitioner thus comes down to this: he claims to be a beneficiary under this contract, and, as such, alleges that there has been a breach of it as against his rights, and asks the Court to enforce its performance by a writ of mandamus.

The respondent denies the alleged breach and avers that, in the light of the conditions existing at the time of the execution of the contract, the word "pupils" means white pupils. It further avers that with full knowledge of all the facts, the Mayor filled the vacancies created by the two rejections of the petitioner; that since his first rejection, the city has twice made the annual appropriation under the contract; that in September last Mr. Elliott, the City Solicitor, gave an official opinion to the effect that there had not been any violation of the contract, and finally, that the city has always construed this contract in the same manner as has the respondent.

It is, however, altogether unnecessary in this proceeding, if not beyond the province of the Court, to construe the contract, because, whatever its true construction may be, the petition must be dismissed. If it be construed to mean white pupils only, the respondent, being a private corporation and no part of the public school system, had a right to make a discriminating contract, and the petitioner would have no rights thereunder. If it be construed as embracing both white and colored pupils, then the action of the respondent resolves itself simply into a refusal to perform its contract, and mandamus does not lie. Whenever it appears that the object of the petition is to enforce contract rights of a private character, the inquiry of the Court into the terms of the contract is at an end, and the construction of it, if in dispute, is for determination in some other proceeding.

It having been shown that the purpose of the suit is to enforce the performance of a private contract, the writ of mandamus cannot be issued. The remedy by mandamus "relates only to the enforcement of duties incumbent by law" on the respondent; it will not lie "for the enforcement of contract rights of a private or personal nature," and the Courts have "steadily refused to extend the jurisdiction into the domain of contract rights." High, Sec. 25, and cases cited.

This restriction upon the remedy by mandamus applies, of course, to corporations as fully as to individuals. "It is well settled that private rights against corporations, dependent wholly upon contract, will not be enforced by mandamus. To warrant this writ against private companies, or their officers or agents, there must be some specific duty to the relator, expressly imposed by the terms of their charters, or necessarily arising from the nature of the privileges or obligations which the charters create."

Rosenfeld vs. Einstein, 46 N. J. L. 481.

Such being the law, the city itself, even if there were a breach by the respondent, could not enforce the performance of this contract by mandamus, and so neither can the petitioner,

even though he might be entitled to admission under the contract.

In accordance with the views expressed, I must overrule the demurrer, and, as the sufficiency of the petition also is brought under review by the mounting of the demurrer, and it shows no sufficient ground for granting the writ, I will also sign an order that it be dismissed.