cent. of their bid with them at the sale, that they were pecuniarily responsible, or that the property was worth more than the purchaser paid for it.

Bill for foreclosure by the Irving Savings Institution against Julius A. Robinson and others. Motion by defendants to set aside sale under foreclosure and for a resale. Motion denied.

Uriah W. Tompkins, for the motion.
F. W. Judge, Jr., opposed.
Frederick W. Littlefield, for purchaser at sale.

McADAM, J. Property at an auction sale must be sold to the highest bidder (Code Civ. Proc. § 1678), which means the highest responsible bidder,—one ready as well as able to carry out the terms of sale and to pay down the 10 per cent. deposits required. "The whole theory of an auction sale proceeds upon the ground that the highest responsible, bona fide bidder is entitled to the goods. Otherwise an auction is a farce. * * * Doubtless the auctioneer must have the right, for his own protection, to reject the bids of an irresponsible party." Benj. Sales (6th Am. Ed., by Bennett) 454; 1 Am. & Eng. Enc. Law (1st Ed.) 989; Den v. Zellers, 7 N. J. Law, 153; Gray v. Veirs, 33 Md. 18; Holder v. Jackson, 11 U. C. C. P. 543; Green v. Meyer (Sup.) 44 N. Y. Supp. 81; Leslie v. Brewing Co., 31 Misc. Rep. 129, 64 N. Y. Supp. 1069; Kinney v. Showdy, 1 Hill, 544. Even a municipality may reject a higher bid of men of doubtful and unknown financial credit, made for a franchise, and accept a lower one of a competing corporation of known financial strength. Barhite v. Telephone Co., 50 App. Div. 25, 63 N. Y. Supp. 659; In re Marsh, 83 N. Y. 431. The term "highest bidder" necessarily carries with it the idea of financial ability of an amount sufficient to successfully carry out the undertaking in which the party has offered to engage. At the present auction sale the property was started at $167,-000, and was then raised by a bid of James R. Smith to $168,000. Thereafter a lady in black made a statement as follows: "One hundred and eighty-two hundred." From other things the lady in black said, her evident purpose was to break up, rather than assist, the sale. The moving papers also allege that a Mr. Dunn made a bid of $169,000, which was not recognized. No one seems to know anything about the mysterious Dunn, his domicile, business, or responsibility; and Dunn himself has not come forward to tell who he is, or what he amounts to financially. No one conducting the sale heard of Dunn or his bid. Emeline S. and Mary C. Robinson, heirs and devisees of the owner of the fee, swear that they bid $200,000 for the property, and that their bid was ignored. While they were evidently acting under excitement and almost unconscious of what they were saying at the sale, the court would, nevertheless, if there was any evidence of their ability to carry out the purchase, receive the mere suggestion from a responsible source of an offer of $200,000 as entitled to great weight. Considering Smith's bid of $168,000, was not the sum of $200,000 rather an erratic bid to follow? Does the mere circumstance not cast doubt upon its bona fides? In addition to these facts, the Robinsons do not show that they had $20,000 with them at the sale, to pay the required 10 per cent., and from their silence on this all-important sub-

ject it is safe to assume that they did not carry that amount of money with them to the exchange salesroom. Every one knows that an auctioneer at a sale requires ready money, and that a person without it may as well stay away. Unless they had this amount of money ($20,000) with them, they were not entitled to be recognized as bidders, and even if they bid upon the property the auctioneer had the right to ignore it. Furthermore, not one word is said about the pecuniary responsibility of these two ladies; no offer has been made to bid more than $168,000, the sum the property brought at the sale; and not a particle of evidence has been furnished that the property is worth more than the purchaser, Mr. Smith, agreed to pay for it. Singularly, all these things so pertinent to a motion for a resale have been omitted from the moving papers. See People v. Bank, 53 How. Prac. 336; Brush v. Shuster, 3 Abb. N. C. 73; Baker v. Baker, 22 Wkly. Dig. 137. Several cases hold that, to authorize a resale, the rule is that there must be a bona fide offer of an increased price, with satisfactory security. Lansing v. McPherson, 3 Johns. Ch. 424; Duncan v. Dodd, 2 Paige, Ch., at page 102; Insurance Co. v. Oakley, 9 Paige, Ch., at pages 263, 264; Baker v. Baker, supra. All these rules have been disregarded by the moving parties, who take the sole ground that they were technically right, and the sale in consequence irregular,—one that ought to be set aside as of course. Where parties move against irregularities, they should at least show that they are technically right themselves. To prove that they were improperly ignored by the auctioneer, the moving parties were bound to establish their right to recognition by the presence of $20,000 at the sale. They ought to have made known their pecuniary responsibility in some reliable manner, and shown that some injury had come to them by the acts of which they complain. Setting aside a judicial sale is not altogether matter of course, and if parties intend to invoke a discretion they should set forth facts making it appear to the judicial conscience that the same ought to be exercised in favor of the moving parties. Nothing of the kind has been done here. To set aside the present sale would be to encourage illusory and "fake" biddings, and tend to bring auction sales into disrepute. The property was regularly sold, at a fair price, to the highest bona fide bidder, whose purchase should not be disturbed.

Motion for resale denied, with $10 costs.