Continental Securities Co. *v.* Northern Securities Co.

## THE CONTINENTAL SECURITIES COMPANY

*v.*

## THE NORTHERN SECURITIES COMPANY.

[Filed April 26th, 1904.]

1. Where a decree enjoined a corporation from voting the stock of competing railway companies which it held, or from exercising any control over them or paying any dividends on account of the stock so held, but provided that it should not be construed as prohibiting the corporation from returning the stock in the railway companies to its stockholders in exchange for its own stock, such decree did not require that the specific stock in the railway companies which stockholders had transferred to the corporation should be returned to them, the proviso being permissive and not mandatory.

2. Where a corporation was enjoined from voting stock which it held in competing railway companies as a part of its capital and assets or from declaring dividends on account thereof, necessitating a reduction of its capital and a division of the surplus thereby created, was proposed by distributing the stock of the railway companies held as assets, every stockholder, some of whom had purchased for cash in the open market, was entitled to his proportionate share of each class of the stock, where there is a possible difference in market value.

3. Where the holding by a corporation of stock in competing railway companies was adjudged illegal, a stockholder, or his successor in interest, cannot, in a court of equity, enforce the return to him of the specific stock in the railway companies which he transferred to the corporation on the ground that the original transfer was void for illegality, since he was himself a conspirator.

4. A corporation, on reducing its capital stock, may distribute a portion of its assets, and retain the balance as its property.

5. On reduction of the capital stock of a corporation, where the surplus thereby created is invested in the stock of railway companies, it is not necessary that it be reduced to cash before distribution to the stockholders, but the stock itself may be distributed.

On order to show cause why an injunction should not issue.

*Mr. Charles D. Thompson,* for the complainant.

*Mr. John W. Griggs, Mr. Robert H. McCarter, Mr. Charles L. Corbin* and *Mr. Thomas Thatcher,* for the defendant.

BERGEN, V. C.

Stated as concisely as the matters under consideration will permit, it appears from the bill of complaint, affidavits and exhibits, offered and used by consent on the hearing, that the defendant was lawfully incorporated under the laws of this state; that the objects for which it was formed, as set forth in its certificate of incorporation, was the purchase, holding and selling of the bonds, evidences of indebtedness or capital stock of other corporations, whether incorporated in this state or elsewhere, and, as owner thereof, to exercise all the rights, powers and privileges of ownership, including the right to vote on any such stock; that shares of the capital stock of the defendant corporation of the par value of $100 each to the extent of three million nine hundred and fifty-four thousand shares were issued and disposed of; that of the stock so issued a large proportion was used in purchasing a majority of the capital stock of the Northern Pacific Railway Company, and also of the Great Northern Railway Company, by virtue of which the defendant company assumed the management and control of those railway companies; that the defendant company purchased one million five hundred and thirty-seven thousand five hundred and ninety-four shares of the common stock and four hundred and ten thousand eight hundred and fifty shares of the preferred stock of the Northern Pacific company, paying therefor, in cash, $43,625,036.50, and one million seven hundred and sixty-eight thousand two hundred and twenty-nine shares of its own stock; that it purchased of the capital stock of the Great Northern Railway Company one million one hundred and eighty-one thousand two hundred and forty-two shares, paying therefor $1,707,200 in cash, and two million one hundred and ten thousand five hundred and seventy-six shares of its own stock; that the defendant issued and sold of its own stock seventy-five thousand two hundred and twenty shares to the public for cash; that, in January, 1902, the

preferred stock of the Northern Pacific Railway Company held by the defendant was called for payment by that company and paid in cash, for which the defendant received $41,085,000, of which it invested $34,709,062.50 in the convertible bonds of the Northern Pacific company, afterward availing itself of the convertible rights vested in the owner of any such bonds; the defendant surrendered said bonds to the Northern Pacific company and received from it the equivalent in shares of the common stock of said company, issued to redeem the bonds. It is thus disclosed that the capital stock of the defendant company was issued in part for the common stock of the two railway companies, which, we may assume for the purposes of this motion, was an exchange of stocks with differences paid in cash; that stock of the defendant company, worth at par $7,522,000, was sold in the public market for cash; that a large amount of common stock of the Northern Pacific company, now owned by the defendant, was issued by the Northern Pacific company directly to it' for the surrender of convertible bonds belonging to the defendant company.

It further appeared that a suit, brought by the United States against the defendant company, based upon an alleged violation of the act of congress, commonly known as the "Anti-trust" act, had resulted in a decree, afterward affirmed by the supreme court of the United States, adjudging that the defendant had entered into a combination in restraint of trade and commerce among the several states, which the act of congress denounced as illegal; that all of the stock of the Northern Pacific Railway Company and all the stock of the Great Northern Railway Company, claimed to be held and owned by the defendant, was acquired and held by virtue of such illegal combination, and upon such adjudication enjoining the Northern Securities Company, or its representatives, from acquiring, or attempting to acquire, any further stock in either of said railway companies, and prohibiting the defendant from voting, or attempting to vote, said stock at any meeting of the stockholders of either of said railway companies, and from exercising, or attempting to exercise, any control, direction, supervision or influence what-

soever over the acts and doings of said railway companies, or either of them, by virtue of its holding any stock therein, or from voting at any corporate election for directors or officers of either of said companies; and said decree further enjoined the said railway companies from paying any dividends to this defendant on account of any stock which it claimed to hold or own of either of said companies and prohibited the said railway companies from permitting the defendant to exercise any control over their corporate acts. The said decree adjudges that nothing in it contained should be construed as prohibiting this defendant from returning and transferring to the stockholders of either of said railway companies any and all shares of stock in either of said companies which the Northern Securities Company might have theretofore received from said stockholders in exchange for its stock, or as prohibiting the defendant from making transfer of the stock to such persons as might then be the holder of its own stock, originally issued in exchange or payment for stock acquired by it in the aforesaid railway companies.

It further appeared that the continued ownership of said railway stocks by the defendant company would not only be useless but a great disadvantage to the stockholders of the company, and that the directors of the company had decided to reduce its capital stock and divide the surplus that would arise upon such reduction between the stockholders, and in order to carry out said determination, on the 22d day of March, 1904, adopted certain resolutions for that purpose, those pertinent to this issue being as follows:

"*Resolved*, In consideration of the premises, it is declared necessary and desirable for this company so to reduce its present capital stock as will enable it, without delay, in connection with such reduction, to distribute among its shareholders the shares of capital stock of said railroad companies held by it.

"*Resolved*, That the board of directors of this company hereby declare it advisable that article fourth (4th) of this company's certificate of incorporation be amended so as to read as follows:

"*Fourth.* The capital stock of this company is hereby reduced to three million nine hundred and fifty-four thousand dollars ($3,954,000), divided into thirty-nine thousand five hundred and forty (39,540) shares

of one hundred dollars each ($100). Such reduction of capital stock shall be accomplished by each holder of outstanding shares of this company's stock surrendering to the company, for retirement, ninety-nine per centum (99) of the shares held by him.

"Upon the surrender to this company by any shareholder of the entire number of shares, and parts of shares, of this company's stock which he is hereby required to surrender, this company will assign to him, for each share so surrendered, thirty-nine dollars and twenty-seven cents ($39.27) of the stock of the Northern Pacific Railway Company, and thirty dollars and seventeen cents ($30.17) of the preferred stock of the Great Northern Railway Company, and proportional amounts thereof for fractional shares of the stock of this company."

And on the same day the said directors called a special meeting of the shareholders of the defendant company to vote upon said resolutions and upon such other business as might be brought before said meeting. That the requirements of the statute regarding the holding of the special meeting have been complied with is not disputed, but the lawful right of the stockholders to approve, and of the directors to carry out, the distribution of surplus as proposed, is questioned, and the court is asked to enjoin the stockholders from meeting and passing upon the resolutions proposed by the directors as aforesaid, and the directors from carrying it out if approved.

The Corporation act of this state very clearly and distinctly defines the method to be pursued by a corporation desiring to reduce its capital stock; it is not disputed but that the proceedings taken in the present instance have followed the statutory directions, so that the asking of the court to enjoin the meeting of the stockholders is a mere incident to the real question, which is the prohibiting of the directors of this company from dividing the surplus in the manner proposed, for if the action of the stockholders at the special meeting should be the approval of the proposed reduction of capital stock the result would be, if carried out, the creation of a large surplus of assets. Before the court will allow an injunction order to restrain a corporation from distributing surplus assets on the prayer of a complaining stockholder it should be satisfied that the complainant is entitled to the relief he asks on the case presented.

The able and ingenious argument of the complainant's counsel rested largely upon the contention that the decree of the supreme court of the United States, above recited, not only prevents the distribution of the surplus assets in the manner proposed, but goes further and requires that the defendant company shall transfer to the original stockholder, or his transferee, the same stock which was delivered in exchange for the defendant's stock. To me it is very clear that the decree of the supreme court will not bear any such construction; it controls the action of these defendants only so far as the holding of the stock and the exercise of such powers as the ownership of stock in a corporation usually confers may be in violation of the act of congress with regard to interstate commerce, and that the statement or proviso in the decree that nothing in it contained should interfere with the transfer of the stock to the stockholders of either of the railway companies, any stock which the defendant might have received from stockholders in exchange for its stock, is not a direction that it shall transfer it in any particular method or form, but is added to the decree to avoid the possible construction that the stock could not be returned to the original holders if it was wise or possible to do so. There is no doubt about the character of the original transaction; it was intended to be, and was, a sale of stock to the defendant company with every *indicia* of ownership and title; the purchaser was not bound to retain one share of the stock; it had the right to sell any or all of it and invest the proceeds in other securities, and did do so in the case of the preferred stock of the Northern Pacific company; upon such sale and delivery the stock of the two railway companies became the assets of the defendant company, upon which the value of its stock depended. Large quantities of the capital stock of the defendant have been sold in the open market to purchasers who had a right to rely upon the well-known character of the assets of this company as a protection to their investment, and it would not make the slightest difference whether the stock in one instance was originally issued for cash and in another in exchange for the stock of the two railway companies; the cash and the stock are the common assets

of the company and each stockholder is entitled to the benefit of all of the assets of the corporation whose stock they hold, and if a division of the surplus is to be made from securities held as assets every stockholder is entitled to have his proportionate share of each class where there is a possible or probable difference in market value.

The complainant also contends that as the purpose for which the stock was acquired has been adjudged to be unlawful, the transfer and sale of the stock was void *ab initio,* that no title passed and upon surrender of the stock of the defendant company, the original holder, or his transferee, is entitled to demand and have the identical stock he sold or transferred to the company returned to him. If this insistment of the complainant is sound, he does not show what property he is entitled to have returned. For all that appears to the court at present his stock may belong to the class that was sold for cash, in which case he would have no ground to complain, for he is getting his equitable portion of the assets of the company, be they worth more or less; but in my judgment he would not be entitled to the relief he seeks if he had been able to show that his stock was originally issued to one who had turned over to the defendant company stock in either of the two railway companies, for if the original stock was issued for an unlawful purpose the person who paid the consideration and who accepted the stock was one of the conspirators and can hardly ask the aid of a court of equity to restore to him property which he contributed to an illegal enterprise; he must abide the consequences of his own act. To permit the originators of an unlawful scheme, or their successors in title, to withdraw from the property of the company a special class of assets and leave as security for the unoffending stockholder such assets as might remain as a security for his investment, is inequitable. This corporation is not to be dissolved; it holds many valuable securities other than the stocks of these two railway companies, and expects to continue business, and might, so far as I can see, sell all of these stocks, the holding of which had become unprofitable, and divide the cash

among the stockholders or invest it in other proper securities. It seems to me that the only question on this branch of the case is what is the character of the title by which the defendant corporation holds these stocks. I am satisfied, from the evidence before me, that the stocks were sold and conveyed without reservation to the defendant, and that its directors might sell all of one class of stock and hold the other, and that each stockholder would then have a joint interest in the stock retained as well as in the cash. If one class of assets had depreciated in value and the other had increased in worth during such ownership, would it be seriously contended that a favored class of stockholders could take the valuable assets and leave the depreciated to satisfy the other stockholders? I think not. Stockholders are, in a sense, partners, and the property of the firm belongs jointly to all. No trust was created when the stocks were transferred, at least none was announced to the public when the stock was offered for sale, or shown on this hearing, and a secret trust, if now disclosed, would not be sustained, at least against such stockholders as are not subject to its protection.

The complainant further argues that the law under which the defendant was organized, while permitting a reduction of stock, does not provide for a distribution of a portion and the retention of the balance of the assets as the property of the corporation. The suggestion that a corporation cannot retain a portion of its assets to represent the capital stock after reduction is without merit, otherwise every reduction of capital would require a distribution of all the property of the company and thereby in effect work a dissolution of the corporation.

By the reduction of the capital stock of a corporation, not impaired by losses, there must necessarily occur a surplus of assets to the extent of the reduction, and unless the rights of creditors will be affected thereby, or the capital impaired, it becomes the duty of the directors to make an equitable distribution of such surplus, or of so much thereof as the carrying on of the business for the best interest of the stockholders

may not require. *Strong* v. *Brooklyn Railroad Co., 93 N. Y. 426; Williams* v. *Western Union Telegraph Co., 93 N. Y. 163; Morawetz Corp. 453.* The proposed distribution is not a dividend in the sense intended by the statute, but a division of surplus capital rendered useless for the purpose usually attributed to capital, because the issue of stock which it represented has been canceled.

The right to distribute the surplus having been determined, the question arises, can the directors distribute securities in which such surplus is invested, or must it be reduced to cash? In this case the character of the assets make an equitable division easy to accomplish; each share of the stock to be assigned to a stockholder in the manner proposed has an equal market value; if there is a difference in value between the two classes, or the value of one is subject to greater fluctuations than the other, each shareholder gets an equal proportion of the fat and the lean, and in view of the possibility that a peremptory sale of this stock, amounting to over three hundred millions of dollars, would be attended with disastrous results to the stockholders of this company, it would seem that the best interests of the shareholders require that a division of the stock of the two railway companies be made between them unless prevented by some imperative legal rule; no such rule exists. On the contrary, the power of directors of a corporation to divide property other than money among the shareholders is sustained by abundant authority. *9 Am. & Eng. Encycl. L. (2d ed.) 695; Ehle* v. *Chittenango Bank, 24 N. Y. 548; Leland* v. *Hayden, 102 Mass. 542.*

Having determined that the stock of the two railway companies constitutes a part of the assets of the defendant company, in which, or in its proceeds, each shareholder has a vested interest to the extent of his holdings of the defendant company's stock; that when the capital stock of a corporation is reduced and a surplus of assets results, it becomes the duty of the directors to divide such surplus as is not required for the use of the company among the stockholders; that a division of property, as distinguished from cash, is lawful;

that each shareholder is entitled to his proportionate share of each class of property so held for distribution, and that the proposed method of division is equitable, it is clear that the complainant has shown no equity upon which to base its claim for the restraining order of a court of equity. Whether this complainant would be entitled to equitable relief in any phase of the case is extremely doubtful. I must take the bill of complaint as stating complainant's position correctly, and it is there alleged that notice of the action of the directors on this subject, together with the call for a special meeting for its approval, was issued on the 22d day of March, 1904, and that after that, and on the 28th day of March following, the complainant went into the market and bought five hundred shares of defendant's capital stock; manifestly he bought such stock with knowledge of the proposed action of the directors and stockholders, and thereupon immediately filed his bill of complaint in this cause. But one inference can be properly deduced from his conduct, and that is, that it bought this stock with the fixed purpose of harassing the directors of the company and its stockholders and to hinder and delay them, in carrying out a proposition for the adjustment of the affairs of the company made necessary by the restrictive order and decree of the United States court, and to delay the stockholders of the defendant company (many of whom had nothing to do with the origin of the scheme afterwards declared unlawful) in the receipt of dividends or income from their investment.

The order to show cause will be discharged.