STUTTGART COOPERATIVE BUYERS ASSOCIATION *v.* LOUISIANA OIL REFINING CORPORATION.

4-4791

Opinion delivered November 1, 1937.

*Al G. Meehan* and *John W. Moncrief,* for appellant.
*Ingram & Moher,* for appellee.

BAKER, J. The appellant prosecuted this suit to prevent the sale of eleven shares of capital stock issued by the appellant to C. G. Stecks. Stecks was one of the

members of the appellant company. He became indebted to the company over and above the value of his capital stock. He did not or would not pay his debt and the appellant corporation alleged cancellation of the stock. Thereafter, while Stecks still had possession of the stock certificate, he executed a note to the Louisiana Oil Refining Corporation, the appellee, and delivered this certificate as collateral security for the payment of his debt.

He did not pay that debt and the appellee in this case filed its suit in the chancery court for judgment and decree foreclosing the pledge and asking for sale of the eleven shares of stock pledged to it by Stecks. It was to prevent this sale that this suit was instituted, and Louisiana Oil Refining Corporation, made a party to that suit, demurred to the complaint and the demurrer was sustained. The Stuttgart Cooperative Buyers Association refused to plead further and its complaint was dismissed. It was from this order and decree of the chancery court that this appeal has been prayed.

The complaint to which the court sustained the demurrer among other things alleged that the plaintiff is a cooperative association organized and chartered under act 632 of the Acts of the General Assembly for the year of 1921; that it was organized for the purpose of purchasing merchandise, chiefly oil and gasoline, and for the distribution and sale of such merchandise, such distribution and sale being principally to the members of the association. It further alleges that C. G. Stecks became a member; that there was issued to him a certificate of membership which carried with it a conditional ownership of certain shares of capital stock; that he became thereby entitled to vote upon matters relating to the conduct of the business of the plaintiff association and had all other rights of membership; that the defendant, Louisiana Oil Refining Corporation, had filed a suit against Stecks to foreclose an alleged lien upon the shares of stock and membership of Stecks in the plaintiff Association; that the said Louisiana Oil Refining Corporation had obtained judgment and it was having the said shares of stock advertised for sale; that said

shares of stock were not subject to said sale and that it was transferable only under conditions set forth in art. 8 of plaintiff association's charter. The applicable part of art. 8 of plaintiff association's charter is as follows:

"Eighth

"The subscriptions for and the ownership of all common stock in this corporation are made and taken upon the conditions:

"(a)   The common capital stock of this corporation may be held and owned by persons actually engaged in farming or engaged in such other business as makes of them, consumers of the commodities handled by this corporation.

"(b)   Whenever a stockholder shall cease to be engaged in the business of farming or any other business necessitating the use of the commodities handled by this corporation and/or shall engage in business wholly or partially competitive to the business conducted by this corporation, such stockholder must tender his stock to this corporation to be purchased by it, at par, as hereinafter provided.

"(c)   All such tenders must be in writing by registered mail addressed to the corporation at its office in Stuttgart, Arkansas; and the corporation shall at the first regular meeting of its Board of Directors, after such written tender to it, act thereon; and in the event that it accepts said tender, it shall give notice of its acceptance and shall within ninety days after the receipt of such tender, pay in cash the par value for said stock at some bank in Stuttgart, Arkansas, to be designated by the corporation in its notice of acceptance.

"(d)   In the event any such stockholder fails to make such written tender as aforesaid the corporation may cancel said stock and shall give notice to the stockholder of such cancellation and shall pay to such stock holder for such cancelled stock its par value in like manner as payment for stock tendered for sale. Such payments to be made not less than ninety days after the cancellation thereof.

"(e) No stock can be issued, sold or transferred otherwise than as above set forth; in the event any person ceases to be eligible as a stockholder or his legal representatives, for purchase at par as herein provided and the corporation shall have the exclusive option to purchase said stock at par for cash at any time within sixty days after such tender."

The complaint further alleged that Stecks had purchased merchandise of the plaintiff association in an amount equal to the value of the said shares; that said Stecks had received assets and property of the association of amounts sufficient to absorb and cancel his said shares and his proportionate interest in the plaintiff association. It also pleaded a cancellation of the said stock; that Stecks had never surrendered his certificate, but had pledged the same to the defendant; proper exhibits were made to this complaint showing copies of the stock certificates, of the by-laws of the plaintiff association, and prayer was to prevent the sale and transfer of the stock to a non-member of the plaintiff association.

In discussing the matters at issue we shall refer to the appellant as the "cooperative" or as the "association" and to the appellee as the oil company. It will perhaps be of some aid to eliminate the long names and simplify statements. Appellee's brief offered to sustain the demurrer presents numerous rulings of the Supreme Court of this state in the matter of the transfer or disposition of capital stock of corporations and it may be said that defendant's position is well taken, provided, only, the general or business corporation statutes of this state are applicable to the present association and like cooperative enterprises.

A determination of that question will be a settlement in this case of the entire controversy presented on this appeal. Act 632 of 1921 is the authority for the organization of the cooperative association. That act as amended now appears in Pope's Digest, § 2262 et seq.

The principle of cooperative associations is not by any means new. As corporations, however, these organizations are relatively recent.

Men have always had their clubs, their voluntary associations, their organizations for the cultivation of fraternalism and sometimes for the advancement of their fortunes, or for the education and culture of the membership. In all these organizations, so long as they were unincorporated, there was rarely a question about the members having the full right to prescribe the qualifications for membership and to select or elect members entitled to receive the advantages and benefits of the association. They likewise had the power of exclusion of members under such rules and regulations as they themselves agreed to. Development of these organizations progressed along certain lines, and some of these particular organizations that made most progress were later organized under the law into corporations possessing practically all the attributes and powers incident to the original cooperative association, or voluntary organization. For instance, fraternal insurance associations as distinguished from so-called "old-line" insurance organizations became corporations. Now, practically all the states have recognized this class of organizations and have provided for the incorporation, regulation and control thereof as distinct from other insurance corporations.

From some of the earliest cooperative banking associations, we are told, came the building and loan associations and these are controlled and regulated under the laws of practically all the states peculiar to their own group, but distinct and different from the laws of banking organizations, and from other business corporations. These are mentioned merely by way of illustration and to show the development of some of the earlier cooperative associations. It was found at an early time, however, that cooperative associations, when formed for business purposes by those engaged in particular fields of endeavor, frequently defeated their beneficent purpose by hazards, perhaps, not contemplated by members. The courts found that they possessed practically all of the arduous burdens and consequent liabilities of partnerships. 4 American Jurisprudence, p. 481, § 41, 7 C. J. S., p. 74, § 32.

It is argued in this case by the appellant association that in 1921 the Legislature attempted to encourage farmers to organize themselves into local business corporations which they could control and operate for their mutual benefit and advancement, and thereby have the benefit of larger buying or purchasing powers as organized groups as distinguished from individual activity. The act, however, takes a much wider range than that suggested by appellants as it provides "for the formation and carrying on of cooperative associations" and provides for the rights, powers and liabilities and duties of such cooperative associations. Pope's Digest, § 2262, act 632 of Acts of 1921.

We take notice that there are organizations for agricultural advancement and development, those doing mercantile business, cooperative banking business and, perhaps, some manufacturing enterprises, all upon the cooperative plan as provided in § 2 of the above mentioned act. Pope's Digest, § 2263.

If the purpose of the foregoing act was to furnish a method for the incorporation of what was formerly known as the voluntary associations, permitting them to retain their former custom of uniting those possessing common interests and to enable them to cooperate with each other in the matter of the development and advancement as groups, with only such limitations as may be found in the above-mentioned act, as it now appears in the digest of the statutes, as it has been amended, the problem presented on this appeal is much simplified.

The act authorizing the incorporation of cooperative associations is complete in itself. It provides for the title or name of the corporation and what the articles of incorporation shall contain, where such articles shall be filed, the percentage or amount of subscribed capital stock that must be paid, and that may be held by a member, for regulation and control by a board of directors, the authorization for the formulation and enforcement of by-laws including the manner of becoming a member and other matters that enable such members to make the corporation effective as a business organization. It pro-

vides also, for the subscription for stock and fixes the extent and conditions of liability of members for debts.

In fact, without going into minute details, it may readily be determined that a cooperative association may be organized as a corporation, may be carried on as such, with each phase of its business determined under the aforesaid act 632 without reference to the laws applicable to other business corporations.

Particular attention is called to the fact that the name of the corporation shall begin with the word "The" and end with the word "association," "company," "corporation," "exchange," or "union." Moreover there is a provision significant in itself, that although shares of stock may be issued, such stock is not voted at meetings of the corporation, but the holder of the stock may have one vote as a member without regard to the number of shares he may hold. The foregoing distinctive characteristics of the cooperative association must indicate to anyone conversant therewith, that it was intended to be an aid and to serve those who have mutual interests. For those who desire investments only and who are not impelled to organize as an aid to separate or individual enterprises, the business corporation act would serve every purpose. But this is not true of groups desiring to act as a unit only in respect to a matter in common, but connected with individual activities, though separable therefrom. It was not the purpose of the Legislature in providing for the organization of associations as corporations to destroy that unity producing the groups, nor was it the purpose of the Legislature to destroy the beneficial effects of voluntary associations of allied interests, but rather to supply a legal agency to take the place of the former almost futile and more dangerous voluntary associations.

With this act there came a new form of corporation not before known to our law.

When the oil company took this certificate of stock it took it with notice imposed by law as to the nature of this organization. It took it with notice of art. 8 of the association's charter, heretofore copied, and which

contained a provision that said stock might not be issued to anyone not eligible to hold the same or that in the event one ceased to be eligible or moves from the state, or dies, or desires to sell his stock, that it must be tendered to the corporation. It took it with knowledge already in its possession, or easily ascertainable, that only a resident could hold stock in the association; that it was ineligible, on that account, and for another vital reason, that it was engaged in a competitive business. It knew that the stock in its hands was of no value and subject to be canceled at any time if cancellation had not already taken effect. The certificate in its possession was the key to all this information.

Certificates of stock of the association are in no sense negotiable. They are rather certificates of membership, but indicate also a voluntary contribution in funds by the member. Any kind of transfer or negotiation to have been effectual necessarily must have been made with the consent of the association. Such was the effect of the agreement made by Stecks with all other members. Had the oil company been eligible to membership it was in no better position than was Stecks in regard to obtaining any return upon surrender of the stock for redemption. It could not elect itself nor anyone else a member, nor by any act of its own, substitute a stranger to take Stecks' place.

An examination of the subject of ''Associations and Groups,'' 4 American Jurisprudence, 455, and, also, ''Articles of Associations,'' 7 C. J. S. 18, will disclose interesting discussions with reference to these voluntary associations, together with some disertations as contained in said chapters on the effect of incorporating. 16 Fletcher Cyclopedia Corporations, § 8286, page 1205, is as follows:

''Relation to members; their rights and liabilities.

''The relations between the association and its members and the rights and liabilities of the latter are fixed, almost entirely, by the enabling statutes, the articles of incorporation or association, and the marketing agreement between the association and members. In the case

of incorporated associations it would seem warrantable to state that as to matters not specifically provided for, the general rules of corporation law as set out in the several chapters of this work are applicable to such associations and their members, at least where they are not contrary to, or inconsistent with, specific provisions of the enabling statute or the contract between the association and its members. The enabling statutes universally limit membership to growers or producers of the particular product or persons connected with the growing, producing or handling of such product as specified therein, and an association may limit the transfer of memberships to growers of the particular product which it handles. It may also provide for the repurchase of shares of a member or stockholder who dies or removes from the locality served by the association. Members have an interest in the assets and accumulated surplus of the association, but, in the absence of a declaration of dividend or other constructive distribution of surplus or earnings, they cannot ordinarily sue the association and recover any proportionate share therein. Members of the association have been held liable for the debts of the association and for assessments levied to pay debts, or for other legitimate purposes where the statute authorized such assessments.''

The citations given sustaining the foregoing announcements are voluminous and instructive.

We hold that the court erred in sustaining the demurrer.

The case is, therefore, reversed with directions to overrule the demurrer and take such further proceedings as may be necessary and not inconsistent with this opinion.