FARMERS UNION CO-OPERATIVE GIN CO. v. TAYLOR.

No. 32219. Sept. 24, 1946.

*172 P. 2d 775.*

Robinson & Oden of Altus, for plaintiff in error.

Gore & Gore, of Altus, for defendant in error.

GIBSON, C. J.  This action was filed in the district court of Jackson county by J. B. Taylor, hereinafter referred to as plaintiff, against Farmers Union Co-Operative Gin Company of Warren, Okla., a corporation, hereinafter referred to as defendant, to recover par value of two shares of capital stock of the corporation held by plaintiff and which defendant had refused to redeem as provided in the by-laws of the corporation.

The defendant was incorporated in 1928 under authority of the Act of the Legislature providing for the creating of co-operative corporations (S. L. 1919, ch. 147, pp. 213-214, as amended and appearing in 18 O. S. 1941 §§ 421-436). The charter provides for capital stock of $25,000 divided into 250 shares of the par value of $100 each. The purpose of the corporation is therein defined as follows:

"That the purpose for which this Corporation is formed is to:—Gin cotton, buy, sell, handle and store all kinds of grain and other farm products, lumber, coal, flour, feed, and any and all kinds of merchandise.

"A further purpose shall be to produce, manufacture and transport any of the commodities covered in the above paragraph.

"It shall be a further purpose of this organization to promote organization and co-operation among farmers in the interest of their protection and betterment."

It was the mutual understanding of the organizers that the by-laws of the corporation should and would provide that any stockholders on removing from the trade territory of the defendant would be entitled to a redemption at par of the stock then held by him. And as an inducement to subscribers the proposed by-laws were exhibited to them and subscriptions made in reliance thereon. The by-laws were adopted at the first meeting of the stockholders and since have continued in force. Section 8 of the by-laws, on which plaintiff relies, is as follows:

"Section 8.  The Corporation shall redeem at par the stock of any such member when that member sells his farming interest in and moves his residence out of the trade territory of this corporation."

In 1942, plaintiff, then owner of two shares of stock, sold his farming interests that lay within the trade territory of defendant, moved therefrom, and made demand upon defendant to redeem his shares of stock. Defendant

refused to redeem and the present action followed.

The cause was submitted to the court on stipulation of facts, in substantial accord with what has been stated, presenting solely an issue of law involving the right of recovery. The court awarded plaintiff judgment in the sum of $184.75, with interest, the principal thereof being the $200 par value of said shares less the amount admitted to be owing on open account by plaintiff to defendant.

It is admitted by the defendant that the sole question here is whether the by-law whereby the corporation agreed to purchase the stock of one leaving the trade territory is an enforceable provision or one against public policy and void. And as the basis for the contention that it is void it is urged that the by-law is violative of 18 O. S. 1941 § 106, which is as follows:

"The directors of corporations must not make dividends except from the surplus profit arising from the business thereof, nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock; nor must they create debts beyond their subscribed capital stock, or reduce or increase their capital stock, except as specially provided by law. For a violation of the provisions of this section, the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen), are, in their individual and private capacity, jointly and severally liable to the corporation, and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, or debt contracted; and no statute of limitations is a bar to any suit against such directors for any sums for which they are made liable by this section. There may, however, be a division and distribution of the capital stock of any corporation which remains after the payment of all its debts, upon its dissolution or the expiration of its term of existence."

Independently of statutory authority therefor, it is generally recognized that a corporation has power, in the absence of constitutional, statutory or charter restrictions, to purchase its own stock where acting in good faith and the rights of creditors and nonassenting stockholders are not adversely affected (14A C. J. 275, sec. 2124, and cases cited). It was so recognized by this court in Western & Southern Fire Ins. Co. v. Murphey, 56 Okla. 702, 156 P. 885, where there is quoted with approval the following from Allen v. Francisco et al., 193 Fed. 825, 114 C. C. A. 453:

" 'A corporation in the absence of constitutional or statutory prohibition, has in general an inherent right, for a bona fide purpose, to retire its capital stock by purchase.' "

And also pertinent here is the following which we there quoted with approval from Express Co. v. Railroad Co., 99 U. S. 199, 25 L. Ed. 319:

" 'The contract of a corporation is presumed to be infra vires, until the contrary is made to appear.' "

It follows, in the instant case, that the question whether the contract is violative of the quoted statute could only arise after it clearly appears that the statute has applicable force.

The section of the statute quoted above, which has been in force in this jurisdiction since statehood, is part of the general law and applicable to corporations created thereunder or coming within the scope thereof, which corporations, generally speaking, are organized for profit. The defendant corporation was organized under a different law which is applicable solely to co-operative corporations and to the extent it is complete in itself there is no warrant to invoke provisions of the general law.

The portion of the statute which is said to be violated by the by-law is the inhibition against reducing or pay-

ing to stockholders any part of the capital stock. If such provision stood apart from the remainder of the section and was not inconsistent with the purpose of the co-operative law and not covered therein there would be afforded an apparent basis for the centention. But neither situation exists.

The quoted statute deals with the duties and liabilities of the directors with respect to three things, the matter of dividends, the matter of withdrawing or reducing the capital stock and the matter of the indebtedness, and the liability imposed by the statute applies with equal force to a violation of any of the duties so defined.

Under the co-operative statutes the matter of apportionment of earnings to reserve fund, dividends, and otherwise is specifically declared by 18 O. S. 1941 § 432, and the question of liability for violation is specifically provided for in 18 O.S. 1941 § 433, as follows:

"If the Directors of such Corporation shall declare and pay any dividend or apportionment of earnings or profits to members or non-members when the Corporation is insolvent or when it would be rendered insolvent by such payment, such directors shall be jointly and serverally liable . . ."

The matter of the liability of directors for excessive indebtedness (which under sec. 106 was the amount in excess of subscribed capital) is specifically declared in 18 O.S. 1941 § 431, as follows:

"If the indebtedness of such corporation shall at any time exceed the amount of its subscribed capital stock and surplus the directors assenting thereto shall be personally and individually liable for such excess to creditors. Except any indebtedness created in favor of the State warehouse revolving fund."

The fact that the Legislature in dealing with a subject-matter corresponding to that of the quoted section, to wit, the liabilities of directors, should adopt and conform two of the bases expressed in the general statute and ignore a third, which would be equally important if appropriate to the new law, is strong evidence that it was purposely omitted because its inclusion would be inconsistent with the purpose to be accomplished through the co-operative law. And that such purpose contemplated a power with reference to transfer of stock not accorded to general corporations where such statute obtains is reflected in subdivision (6) of section 425, dealing with powers, as follows:

"To make by-laws not inconsistent with law for the management of its property, the regulation of its business and the transfer of its stock."

It is clear that the provisions of section 106, quoted above, are not applicable to the defendant.

Apart from the fact the statute has no such application, it is manifest the provisions thereof relied on, if held applicable, would conflict with a course of conduct that is deemed necessary to the accomplishment of the purpose of the co-operative. Upon this question it is stated in Co-Operatives, Organization and Operation, by Packel (1940):

"The important feature of the personal character of the ownership interest in a co-operative is also manifested by the principles applicable to the transfer of such interests. As already pointed out, in the ordinary corporation the holder of shares has an unconditional right of selling those shares. Restraints on that right of alienation are the exception and have been upheld only in certain cases where the courts thought the restraints were reasonable in character and in purpose. In the ordinary co-operative, however, the right to transfer the shares is almost always limited. The limitation usually requires the shares to be offered to the co-operative at par or cost prior to any sale. A restraint on the transfer of shares of a co-operative is valid since it enables the co-operative to keep out of its membership undesirable persons, which is an important requirement for the success of a co-operative."

In Carpenter v. Dummit, 221 Ky. 67, 297 S. W. 695, it is said:

". . . . to permit the sale of its stock

to persons not interested in co-operative marketing and possibly unfriendly thereto, would render it possible to defeat the very purpose which it was organized to accomplish."

The provision for purchase of its own stock is recognized as proper method in the accomplishment of the purposes of co-operative corporations. In 16 Fletcher Cyclopedia Corporations, §8286, p. 1205, it is said:

"The enabling statutes universally limit membership . to growers or producers of the particular product or persons connected with the growing, producing or handling of such product as specified therein, and an association may limit the transfer of memberships to growers of the particular product which it handles. It may also provide for the repurchase of shares of a member or stockholder who dies or removes from the locality served by the association."

See, also, Lindsay v. Arlington Co-Operative Ass'n, 186 Mass. 371, 71 N. E. 797; Loch v. Paola Farmers' Union Co-Op. Creamery and Store Ass'n, 130 Kan. 136, 285 P. 523; Whitney v. Farmers' Co-Op. Grain Co., 110 Neb. 157, 193 N. W. 103; Stuttgart Co-Operative Buyers Ass'n v. Louisiana Oil Refining Corp., 194 Ark. 779, 109 S. W. 2d 682.

The judgment is affirmed.

HURST, V.C.J., and RILEY, OSBORN, and BAYLESS, JJ., concur.